# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA    :

                               :      Appeal No. 23-4235

v.                                :

                               :

ANDREW BRADLEY GEARHEART    :

## **MEMORANDUM BRIEF OF THE UNITED STATES**

The United States of America, through undersigned counsel, hereby files this Memorandum Response Brief, in accordance with Federal Rule of Appellate Procedure 9, opposing the defendant's appeal of the conditions of release imposed by the district court. The defendant argues there was insufficient basis for the district court to impose certain conditions of pretrial release and that the district court used an incorrect legal standard in imposing those conditions. The record below adequately supports the imposition of the bond conditions, and the district court did not clearly err in imposing them. In addition, because Gearheart contested only certain conditions, and not the prerequisite finding that Gearheart posed a nonappearance risk or risk of danger, he cannot prevail under plain error review. This Court should affirm.

1

## JURISDICTIONAL STATEMENT

Andrew Bradley Gearheart has been charged by a federal grand jury with one count of procuring another to make a false statement to a licensed firearms dealer on a Firearm Transaction Record form in relation to the purchase of a 9mm pistol, in violation of 18 U.S.C. §§ 2 and 922(a)(6). A jury trial is scheduled for May 17-18, 2023. ECF No. 36. On March 21, 2023, Gearheart was released on a $5000 unsecured bond subject to conditions of release. On March 23, 2023, Gearheart filed a timely notice of appeal of the order setting conditions of release pending trial. *See* Fed. R. App. P. 4(b)(1)(A)(i).

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.

This Court has jurisdiction of this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c), as the district court's order of setting conditions of release, filed on March 23, 2023, in Case No. 7:23CR00013 (Hon. Robert S. Ballou), ECF No. 16,[1] is a final order that may be appealed directly to this Court. 18 U.S.C. § 3145(c); *see also United States v. Emakoji*, 990 F.3d 885, 890 (5th Cir. 2021) (18 U.S.C. § 3145(c) confers jurisdiction to review bond conditions); *United States v. Gunderson*, 978 F.2d 580, 582-83 (10th Cir. 1992) ("A release . . . order, or a decision denying revocation or amendment of such an order, is appealable."); *United*

---

[1] Hereinafter, citations to district court docket entries will be denoted as "ECF No. ___." Citations to the Appellant's Appendix are denoted as "App. ___", and citations to the Sealed Supplemental Appendix will be denoted as "SA ___."

*States v. Foster*, 278 F.2d 567, 569 (2d Cir. 1960) ("in the rare case where the movant contends that denial of the motion [to extend bail limits] is an arbitrary exercise of discretion and violates his constitutional rights, we believe the order should be appealable").

## STATEMENT OF THE CASE

Gearhart was indicted by a grand jury in the Western District of Virginia on March 9, 2023, on one count of procuring another to make a false statement to a licensed firearms dealer on a Firearm Transaction Record form in relation to the purchase of a 9mm pistol, in violation of 18 U.S.C. §§ 2 and 922(a)(6). App. 21. The indictment also sought forfeiture of "any firearms and ammunition involved or used in the commission of said offenses, or possessed in violation thereof," and specifically sought forfeiture of a Taurus G2C 9 mm, pistol, serial number ABL156853. App. 21-22.

On March 21, 2023, Gearheart was arrested pursuant to an arrest warrant on March 21, 2023, and an initial appearance, arraignment, and bond hearing were held before The Honorable Robert Ballou, U.S. District Court Judge.[2] ECF Nos. 10, 12.

---

[2] Judge Ballou was previously the magistrate judge assigned to the Roanoke Division. Due to his recent confirmation to the district court, there is currently no magistrate judge sitting in the Roanoke Division. Because District Judge Ballou conducted the bond hearing after his confirmation to the district court, the United States concurs the review provision of 18 U.S.C. § 3145(b) is inapplicable in this case. Because Judge Ballou is a judge of "the court having original jurisdiction over

3

Prior to the hearing, a United States Probation Officer ("USPO") prepared a Pretrial Services Report ("PTSR"). SA 27-32. The USPO conducted an interview of Gearheart, obtained criminal history (NCIC) and Lexis/Nexis/Accurint reports for Gearheart, and spoke with Gearheart's mother. SA 28. Gearheart, who is 21 years old, reported living with his mother his entire life. *Id.* He stated he had last worked in 2022 moving furniture and had been unemployed for the last nine months, but had applied for jobs at several corporations. SA 29-30. He reported no medical problems, mental health conditions, or alcohol or drug use. *Id*. He stated he had only tried marijuana once. SA 30. Since the age of 16, Gearheart amassed five criminal convictions. SA 30-31. He has two grand larceny convictions, an auto theft conviction, a conviction for possession of marijuana, and at least one[3] conviction for obstruction/resisting without force. *Id.* He also has additional arrests for malicious wounding as part of a mob and for assault and battery, for which the charges were dismissed or nolle prossed. *Id.*

The USPO concluded Gearheart posed a risk of nonappearance due to the offense charged, his lack of employment, and his criminal history, and that he posed

---

the offense," the order of conditions of release constitutes an order appealable directly to this Court. *See* 18 U.S.C. § 3145(a).

[3] The PTSR lists two obstruction/ resisting convictions as well as two malicious wounding and two assault and battery arrests. SA 30-31. It appears, however, each of these are listed twice.

a risk of danger to others due to the nature of the offense, his history of violent behavior, his prior charges for violent offenses, and his criminal history. SA 31. Due to the identified risks, the USPO recommended release on a $5000 unsecured bond with a list of conditions. SA 30-31.

At the bond hearing, the court noted it had "the benefit of the Pretrial Services report," and inquired whether the parties had anything to offer "other than those recommendations." App. 10. The United States advised the court it was not seeking detention. *Id.* Defense counsel advised the court Gearheart had no "information to offer aside from what's in the Pretrial Services report." *Id.* He then advised the court "we do object to a number of the conditions that are requested." *Id.* Importantly, Gearheart did not object to the necessity for all conditions, did not object to the imposition of all of the non-mandatory conditions, and did not request a personal recognizance bond. *Id.*

The court advised it would first state the conditions it intended to impose and "then we'll address any objections." App. 10. The court then explained:

> So first, of all, Mr. Gearheart, I'm going to set the terms and conditions of release, and I'm going to remind you of couple of things. First of all, in federal court, bond is designed to assure two things: One is that you're in court, on time, ready to go when you're required to be here; and secondly, that you are of good behavior while on pretrial release. If you violate any of the conditions that I set, I want you to understand that you're subject to being taken into custody and held until this matter is resolved.

5

> If you commit a federal, state, or local crime while on pretrial release,
> you're also subject to being indicted separately by the government for
> violating the terms of my order.

App. 11. The court then announced it would set an unsecured bond of $5000. *Id*. It next asked Gearheart some questions concerning his living arrangements before listing the conditions it intended to impose, including requiring him to maintain his residence with his mother; not possessing a firearm and living in a home free of firearms; consenting to warrantless searches "if there's reasonable cause to believe that you're violating the terms of pretrial release;" seeking employment; requiring permission to travel outside the district; refraining from "excessive use of alcohol" and possession or use of controlled substances without a prescription; submitting to drug testing if the USPO believes it necessary; avoiding contact with known witnesses in the case; reporting contact with law enforcement; cooperating with the supervising officer; and, surrendering any passport and not applying for one. App. 11-12.

Gearheart's counsel then objected to four of the court's conditions: (1) the warrantless search requirement; (2) the travel restrictions; (3) the granting of discretion to the supervising officer to order drug testing; and (4) the requirement that he "cooperate with his probation officer in all respects." App. 14-15. He argued the warrantless search condition is unnecessary given that the alleged offense was three years earlier, Gearheart is not a danger to anyone, and it is a violation of his

**6**

Fourth Amendment rights. App. 14. He argued Gearheart is not a flight risk and it is unnecessary for him to obtain permission to travel. App. 14-15. He asserted the discretion to drug test also has "constitutional implications" and is unnecessary given the lack of evidence of substance abuse. App. 15. And, he argued the requirement that Gearheart cooperate with the supervising officer is "vague." *Id.*

The court then explained why it would overrule Gearheart's objections:

> So let me, first of all, deal with the last one first; and that is cooperate with probation officers, pretrial services officers. The Court has an obligation to supervised those who are under federal indictment. And part of the obligation of a person who is being supervised is to cooperate in all respects, respond to phone calls, texts, and things of that nature. And it's not – it is an appropriate condition.

> Secondly, with respect to a warrantless search and the discretion to test, the probation and pretrial services officers also have an obligation to protect the community. And if they have reason to believe that a person is in violation of the conditions, they can conduct an administrative search of their own to assure that they're abiding by terms and conditions of release. And the same thing with respect to if they believe that a person – in the way that I've set this up here, I am not requiring screening; but if the probation officer believes that there is a violation of the term that they not use illegal or controlled substances, they're given the discretion to test.

> With respect to travel, the travel is restricted to within Virginia, and permission is liberally granted to those who are on pretrial release to be able to travel outside of Virginia. It's simply to keep the probation officer notified as to what those conditions are. And if the permission is not granted, then the Court is always available to be able to address any concerns that are raised in that regard.

App. 16-17.

After the hearing concluded, on March 23, 2023, Gearheart executed an unsecured bond and the court entered an Order Setting Conditions of Release. App. 23-26.

On April 26, 2023, shortly before the filing of this Brief, the district court issued an order on a Petition for Action on Conditions of Pretrial Release which is seeking revocation of Gearheart's bond for violations of four conditions, including submitting to drug testing and following the instructions the USPO. The court directed a summons be issued. ECF No. 35. As of the time of this writing, a bond revocation hearing has not yet been set.

## STANDARD OF REVIEW

This Court, sitting en banc, has held that appellate court "review of the final detention order of the district court is under a clearly erroneous standard," *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989) (en banc). This Court conducts an "independent review" under 18 U.S.C. § 3145(c), "with 'deference to the determination of the district court.'" *United States v. Stewart*, 19 Fed.Appx. 46, 48 (4th Cir. 2001) (unpublished).

In reviewing for clear error, this Court considers "whether the evidence as a whole supports the conclusions of the proceedings below." *Stewart*, 19 Fed.Appx. at 48 (citing *United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir. 1987)). It reverses only if "left with the definite and firm conviction" that the district court

made a "mistake." *United States v. Charboneau*, 914 F.3d 906, 912 (4th Cir. 2019) (quoting *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012)). There are four grounds for reversing factual findings under clear error review:  "(1) they were derived from an incorrect legal standard, (2) they 'are not supported by substantial evidence,' (3) they were made while ignoring 'substantial evidence' supporting the opposite conclusion, and (4) they are 'contrary to the clear weight of the evidence.'" *Heyer v. U.S. Bureau of Prisons*, 984 F.3d 347, 355 (4th Cir. 2021).

"If an error is not properly preserved, appellate-court authority to remedy the error . . . is strictly circumscribed," and is subject to plain error review. *Puckett v. United States*, 556 U.S. 129, 134-35 (2009). To prevail under plain error review, the defendant must show (1) an error was made; (2) the error is plain; and, (3) the error affected his substantial rights.  If the defendant establishes an error occurred, he must next establish the error was "plain," *i.e.,* "clear" or "obvious." *United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).  "An error is plain 'where the law at the time . . . was settled and clearly contrary to the law at the time of appeal.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).  The defendant must also establish it "affected his substantial rights, *i.e.*, that it was prejudicial.'" *Id.* at 548 (quoting *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998)). The analysis for affecting substantial rights "is the same as that conducted for harmless error review under [Federal Rule

of Criminal Procedure] 52(a), with the important difference that the burden rests on the defendant, rather than the government." *Id.* at 547. Even if the defendant establishes a plain error affected his substantial rights, this Court will "correct such an error . . . 'only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (quoting *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009)).

## ARGUMENT

### A. Legal Background

The Bail Reform Act, 18 U.S.C. §§ 3142-3145, directs that upon appearance on a charged offense, the court shall, pending trial, take one of the following actions: (1) release a defendant on personal recognizance or an unsecured appearance bond; (2) release a defendant on conditions of release; (3) temporarily detain a defendant pending revocation of a conditional release, deportation, or exclusion; or (4) detain the defendant. 18 U.S.C. § 3142(a).

At a minimum, an unsecured appearance bond, if imposed, is "subject to the condition that the person not commit a Federal, State, or local crime during the period of release" and they cooperate in DNA collection, if authorized by law. 18 U.S.C. § 3142(b). If the judge determines that release on personal recognizance or an unsecured appearance bond "will not reasonably assure the appearance of the

person or will endanger the safety of any other person or the community," then additional conditions of release may be imposed under 18 U.S.C. § 3142(c). 18 U.S.C. §§ 3142(b), 18 U.S.C. § 3142(c)(1).

If additional conditions are warranted, the Bail Reform Act directs the court to impose two mandatory conditions—that the defendant "not commit a Federal, State, or local crime during the period of release," and "cooperate in the collection of DNA sample,"—and also "the least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(A)-(B). Additional conditions "may include" placement in the third-party custody of another person; maintaining, or actively seeking, employment; maintaining or beginning an educational program; "specified restrictions on personal associations, place of abode, or travel"; avoiding contact with alleged victims or potential witnesses "who may testify concerning the offense"; regular reporting to pretrial services; a curfew; a prohibition on weapon possession or use of alcohol, narcotic drugs, or controlled substances without a prescription; medical or psychiatric treatment, including drug or alcohol-abuse treatment; agreeing to forfeit property if the defendant fails to appear; executing a bail bond; returning to custody for specified hours; and "any other condition that is reasonably necessary to assure the

appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(i)-(xiv).

In determining which conditions would reasonably assure the appearance of the defendant and the safety of any other person and the community, the district court must evaluate and weigh four factors:

(1) the nature and circumstances of the offense charged . . .;

(2) the weight of the evidence . . .;

(3) the history and characteristics of the defendant, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceeding; and

    (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release [from another criminal case]; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release. . .

18 U.S.C. § 3142(g).

The Bail Reform Act does not specifically state what threshold of evidence is required to support the imposition of conditions of release. However, it does state that any fact that the district court uses to support a finding of detention must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Singh*, 860 F. App'x 283, 284 (4th Cir. 2021) (unpublished).

**B. Analysis.**

Gearheart challenges the imposition of four of the conditions of release imposed upon him: (1) that he cooperate with his probation officer; (2) that he and any other adult present consent to warrantless searches of his home; (3) that he not travel outside the district without permission of his supervising officer; and, (4) that he submit to drug testing if his supervising officer believes it to be warranted. Mem. Br. at 4-5. He asserts the district court relied upon no evidence in support of the four conditions and argues the district court's order should thus be given no deference. *Id.* at 1-2. He claims that, rather than basing the conditions upon the risks posed by the defendant, the court imposed all of the conditions based "on the mistaken belief that the 'court has an obligation to supervise those who are under federal indictment.'" *Id.* at 5-6. Gearheart's challenge to the conditions should fail as each condition is supported by the evidence that he poses both a risk of nonappearance and risk to the safety of others. In addition, Gearheart's argument that the court used the wrong standard was not properly preserved and is subject to plain error review. Even if the court did err, the error was not plain, and did not affect Gearheart's substantial rights. And even if this Court were to conclude otherwise, it should decline to note the error because the conditions are all justified.

**1. The District Court Judge Properly Relied Upon the Evidence Contained in the Pretrial Services Report.**

The district court did not clearly err in imposing the four bond conditions at issue in this appeal. Contrary to Gearheart's assertions, the court clearly relied upon evidence in support of its determination that conditions were required to supervise the defendant. The court began the bond hearing by noting that it had "the benefit of the Pretrial Services Report," and asking whether the parties had anything else to offer "other than those recommendations." App. 10. (They did not.) In so doing, the district court made it clear it was considering the recommendations of the Probation Officer—which included both the recommended finding that Gearheart was both a risk of nonappearance and a risk of danger to others and the recommendation that twelve conditions be imposed upon him. SA 31-32. The court then proceeded to impose the conditions it deemed necessary to mitigate the risks posed by Gearheart and to facilitate the Probation Officer's ability to supervise Gearheart while on bond. App. 10-13 ("We'll see what conditions I set, and then we'll address the objections.").

Because it is clear the district court was relying upon and adopting the facts and recommendations in the Pretrial Services Report, Gearheart is mistaken when he asserts the district court imposed the conditions based on no evidence at all. And, in fact, each condition was adequately supported by the evidence.

The travel restriction is adequately supported by the record. The information contained in the Pretrial Services Report, relied upon by the court, pointed to the

offense charged, Gearheart's lack of employment, and his criminal history, which is lengthy given his young age, as a basis for finding that he poses a nonappearance risk. Relying on this evidence was not clear error. Between the ages of 16 and 21, Gearheart was arrested eight times and convicted five times, including for an obstruction/resisting arrest. He is currently charged with counseling, commanding, inducing, and procuring another person to complete a Firearms Transaction Record that falsely represented the purchaser of the firearm, a Taurus 9mm pistol. His record and current charge established a clear pattern of non-compliance with authority. And, he is currently neither employed nor in school. Given his history and lack of occupation, it was reasonable for the court to conclude he poses a nonappearance risk, justifying a condition that his travel be restricted. Moreover, the travel restriction does not prohibit travel, it merely requires the approval of the officer before travel is undertaken, ensuring the supervising officer is kept apprised of Gearheart's general whereabouts and allowing the officer to ensure that Gearheart has the intent and the means to return from the travel prior to any scheduled court hearing.

The other three conditions challenged by Gearheart are all conditions imposed to minimize the risk posed by Gearheart towards others and are necessary for a pretrial services officer to effectuate pre-trial supervision of this defendant. Given Gearheart's criminal history, his current felony charge, and the fact that he is neither

employed nor enrolled in school, the court did not clearly err in finding that Gearheart poses a risk of danger to others. Gearheart has multiple theft convictions and a conviction for drug possession. Although Gearheart is not charged with the unlawful possession of a firearm, the inclusion of a specific firearm in the forfeiture allegation is clear evidence that his offense involved obtaining an actual firearm— and not merely attempting to obtain one, under circumstances in which it is alleged Gearheart attempted to mask the actual owner of the firearm. And, although he denied drug use generally and claimed to have used marijuana only one time, his conviction for unlawful marijuana possession suggests a more extensive history with drug possession than he acknowledged.

Given the very reasonable conclusion that Gearheart poses a danger to others, the district court did not clearly err in imposing conditions that allow the pretrial services officer to effectively supervise Gearheart in order to minimize the risk to society posed by his release on bond. The conditions that Gearheart cooperate with his supervising officer, that he consent to warrantless searches, and that he submit to drug testing are all conditions that are necessary for supervision to be effectuated. They serve to minimize the risk that Gearheart poses to others and to help ensure he comply the mandatory condition that he not commit another crime while on bond. Without those basic conditions, the supervising officer would be powerless to minimize the risk posed by Gearheart.

**2. Gearheart's Claim that the Court Utilized the Wrong Legal Standard is Subject to Plain Error Review, under which Gearheart Cannot Prevail.**

Although Gearheart specifically challenges only four of the conditions imposed upon him, his arguments are imbued with a challenge to the court's authority to impose any conditions at all. He begins his argument by pointing out that the Bail Reform Act presumes release on personal recognizance and "only authorizes the court to impose conditions of release when based on a specific finding that they are required." Mem. Br. at 4. Although he acknowledges that conditions can be supported "by evidence or reasonable inference from evidence contained in the record," *id.*, he asserts it is unreasonable to impose "[s]tandard conditions" to enable pretrial services officers to effectively enforce necessary conditions. He asserts the district court relied upon the wrong legal standard in imposing the conditions and claims, as a result, this Court should give no deference to the district court's Order. Although Gearheart had a copy of the Pretrial Services Report and knew of the recommendations contained therein, he did not object to the overall recommendation of the officer that at least some conditions were necessary under § 3142(c). He did not object to the imposition of eight of the imposed conditions. And, he did not request release on personal recognizance or on an unsecured bond without conditions. Instead, he objected to just four conditions on limited grounds. And he did not object to any other discretionary condition, did not argue the court

was using the wrong standard in imposing bond, and did not argue the court lacked authority to impose conditions intended to effectuate supervision. Thus, his claim that the district court used the wrong legal standard and should be given no deference should be reviewed for plain error.

Under plain error review, Gearheart cannot prevail because he cannot establish a plain error occurred or that any possible error affected his substantial rights. And, even if one did exist, this Court should decline to notice such an error because the bond conditions are necessary, appropriate, and supported by the evidence.

Gearheart is correct that, in cases that do not involve a presumption of detention under 18 U.S.C. § 3142(e), the Bail Reform Act begins with an assumption of release on personal recognizance "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Once a finding is made that release on personal recognizance will not reasonably assure the appearance of the defendant or will endanger the safety of others, the court is empowered to impose "the least restrictive further condition, or combination of conditions" that will assure the defendant's appearance and the safety of others. 18 U.S.C. § 3142(c)(1)(B). Gearheart does not cite any authority, and the United States knows of no authority, establishing the proposition that the court cannot include

conditions that allow the pretrial services officer to effectively supervise a defendant. In fact, the court is tasked with crafting the least restrictive condition, or combination of conditions, to effect the goals of ensuring appearance and protecting others from further crimes of the defendant, and it would be impossible to meet those goals if the supervising officer lacked the authority to monitor Gearheart's compliance. Thus, Gearheart has not established an error occurred, much less a plain error.

Even if a plain error did occur, his substantial rights were not affected as the bond conditions are appropriate and necessary to ensure he appears in court, does not commit additional crimes, and does not pose a danger to others. Gearheart is a 21-year-old, unemployed male who has obtained five criminal convictions in the past five years, including multiple theft convictions and a conviction for obstruction/resisting arrest without force. His current offense involves an attempt to mask the true purchaser of a firearm. He has demonstrated a clear pattern in his short life of resistance to authority and rule-breaking. An unsecured bond with the conditions imposed by the district court to ensure compliance with the law and to ensure that he appears in court as directed are warranted and are appropriate. Because it is clear from the evidence before the court that conditions are warranted, Gearheart cannot establish his substantial rights are affected by any error the district court might have made. And, even if his substantial rights were affected, this Court should decline to notice any such error. The conditions are not onerous. They are

19

tailored to ensure compliance with the law—which is a mandatory condition of bond—and there are no grounds for disturbing them.

## CONCLUSION

For these reasons, the district court's order setting conditions of release should be affirmed.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/ Jennifer R. Bockhorst
Attorney for United States of America
Tennessee Bar No. 021395
U.S. Attorney's Office
180 West Main Street
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)

<u>CERTIFICATE OF SERVICE</u>

I certify on Wednesday, April 26, 2023, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to counsel for the defendant.

/s/ Jennifer R. Bockhorst